**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **WM MOBILE BAY** | ) |
| **ENVIRONMENTAL CENTER, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **CIVIL ACTION NO. 18-00429-KD-MU** |
| | ) |
| **THE CITY OF MOBILE and THE CITY** | ) |
| **OF MOBILE SOLID WASTE DISPOSAL** | ) |
| **AUTHORITY,** | ) |
| | ) |
| **Defendants.** | ) |

**ORDER**

This action is before the Court on Defendants City of Mobile Solid Waste Disposal

Authority's Rule 50(b) Renewed Motion for Judgment as a Matter of Law, or, in the alternative,

Rule 59 Motion for New Trial and evidence in support (docs. 252, 254, 256), Plaintiff WM Mobile

Bay Environmental Center, Inc.' response and evidence in support (docs. 259, 261) and the

Authority's reply and evidence in support (docs. 267, 269).  Upon consideration, the Rule 50(b)

Renewed Motion is DENIED and the Rule 59 Motion for New Trial is DENIED.

I. Rule 50(b) and Rule 59

Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, "[i]f the court does not grant

a motion for judgment as a matter of law made under Rule 50(a),[1] the court is considered to have

submitted the action to the jury subject to the court's later deciding the legal questions raised by the

motion." Fed. R. Civ. P. 50(b). The parties may "file a renewed motion for judgment as a matter of

---

[1] "Rule 50(a) provides that a party may move for judgment as a matter of law 'before the case is submitted to the jury' and the 'motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.'" McGinnis v. Am. Home Mortgage Servicing, Inc., 817 F.3d 1241, 1254 (11th Cir. 2016).

law and may include an alternative or joint request for a new trial under Rule 59.  In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b).

The Court's "analysis of a motion for judgment as a matter of law under Rule 50 is the same regardless of whether the analysis 'is undertaken before or after submitting the case to the jury.' " Chaney v. City of Orlando, 483 F.3d 1221, 1227 (11th Cir. 2007). Therefore, "in ruling on a party's renewed motion under Rule 50(b) after the jury has rendered a verdict, a court's sole consideration of the jury verdict is to assess whether that verdict is supported by sufficient evidence." Id. To evaluate whether the verdict is supported by sufficient evidence, the Court considers "all the evidence, together with any logical inferences, in the light most favorable to the non-moving party." McGinnis v. Am. Home Mortgage Servicing, Inc., 817 F.3d 1241, 1254 (11th Cir. 2016).  " 'Judgment as a matter of law is appropriate when [the non-movant] presents no legally sufficient evidentiary basis for a reasonable jury to find for him on a material element of his cause of action.' " Williams v. First Advantage LNS Screening Sols. Inc., No. 17-11447, 947 Fed. 3d 735, 744 (11th Cir.  2020) (quoting Proctor v. Fluor Enters., Inc., 494 F.3d 1337, 1347 n. 5 (11th Cir. 2007)) (quotation marks omitted). "If there is a substantial conflict in the evidence, such that reasonable and fair-minded persons exercising impartial judgment might reach different conclusions, the district court must deny the motion." Id.

A Rule 59 motion for new trial may be granted "on all or some of the issues, and to any party. . .after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).  A party may move for a new trial under Rule 59 on basis that "the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair ... and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury."

McGinnis, 817 F.3d at 1254 (citation omitted). "Thus, under Rule 59(a), a district court may, in its discretion, grant a new trial if in [the court's] opinion, the verdict is against the clear weight of the evidence ... or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Id. (citations and internal quotation marks omitted) (bracketed text in original).

Also, "in a motion for a new trial the judge is free to weigh the evidence." Id. (citation omitted). "[W]hen independently weighing the evidence, the trial court is to view not only that evidence favoring the jury verdict but evidence in favor of the moving party as well." Id. (citation omitted).

II. Speculative lost profits

The jury awarded WM Mobile $2 million for its claim for lost profits resulting from the Authority's diversion of waste to another landfill (doc. 250-1). The Authority now moves for judgment as a matter of law or for a new trial as to this claim.[2] The Authority argues that reasonable certainty is the applicable standard of proof but WM Mobile failed to meet this standard, and instead, the jury's award was based on speculation, without a reasonable basis, and was not ascertained with reasonable certainty (doc. 256, p. 5-17).

Specifically, the Authority argues that WM Mobile presented no witness testimony as to the amount of lost profits, instead leaving this determination to the jury's speculation. The Authority argues that WM Mobile's lost profits calculation required multiplying the "'exact volumes' of cubic yards of diverted wastes by 'conversion factors' tied to different types of waste streams comprising the Diverted Waste" and then the "'exact volume' in tons would be multiplied by Plaintiff's supposed 'lost profit per ton.'" (doc. 256, p. 8). The Authority argues that WM Mobile failed to

[2] The Authority raised substantially the same arguments in the Rule 50(a) motions (docs. 247, 249).

3

provide sufficient evidence of the actual cubic yards or a reasonable estimate of the cubic yards of waste diverted, i.e., the "exact volume", because it presented only the unreliable Gulf Hauling, Inc. invoices[3] and that "any attempt to determine the yardage (must less tonnage) from these invoices would be *pure speculation* and inherently *unreliable."* (Id., p. 11-12) (italics and parenthetical in original).

The Authority also argues that the jury had to convert the cubic yards to tons to arrive at an estimate of lost profits, but the conversion factors from the EPA documents (which WM Mobile introduced to the jury through the Authority's expert witness) were inapplicable to the waste stream at issue, the diverted waste in Alabama.[4]   The Authority also argues that its expert witness testified that the EPA conversion factors were not relied upon by the waste management industry.   From this, the Authority argues that the jury had no rational basis to form a reasonable estimate of the amount of lost profits, and that the lost profits were not proven with reasonable certainty (doc. 256, p. 14-15).

Last, the Authority argues that WM Mobile "failed to prove the lost profits per pound." (doc. 256, p. 16).   Specifically, the Authority argues that the witness "ignored certain costs" and did not include them in calculating the lost profit per ton.   The Authority asserts that the "costs presented to the jury are not the true costs" and as a result, the profit per ton was inflated (doc. 256, p. 16-17).

---

[3]  According to the Authority, the diverted wastes were not weighed.  Instead, Gulf Hauling invoiced the City of Mobile based upon the cubic yard capacity of different-sized trucks, but not the actual weight of the waste or its composition (leaves, limbs, construction and demolition, dirt, etc.). And without regard to whether the waste was compacted or whether the trucks were overloaded, full, or underloaded (doc. 256, p. 9-12).

[4]  The Authority points out that the EPA factors were for converting cubic yards of certain types of waste to pounds in Oregon and California (doc. 256, p. 14).

4

In response, WM Mobile argues that because it seeks general, expectancy damages, i.e, lost profits based on breach of contract, it need only submit to the jury the best evidence available[5] - specifically the Gulf Hauling invoices and testimony by the Gulf Hauling employee and the City of Mobile employee as to the diverted wastes  - and that this evidence was sufficient to form a reasonable basis for the jury's determination of lost profits (doc. 261, p. 2, 5-8).  WM Mobile explains that the "heightened standard of 'reasonable certainty' is the applicable standard for calculating consequential lost profit damages", but that is not the type of damages it seeks (Id.). However, WM Mobile alternatively argues that the evidence submitted to the jury was sufficient under the "reasonable certainty" standard (Id., p. 5).

 WM Mobile argues that the Gulf Hauling invoices were the best evidence in that they documented each load of waste diverted, and the capacity of each truck. Moreover, the invoices were the only records available to document or quantify the volume of waste actually diverted during the years from 2015 to 2019.  WM Mobile points out that the testimony also established the type of waste diverted (doc. 261, p. 2, 7-9).

WM Mobile also argues that converting cubic yards to pounds commonly occurs in the waste industry and that the EPA conversion factors are industry standards.  WM Mobile points out that the expert witness testified at trial that he used the EPA conversion factors, that they apply to municipal solid waste, and are intended to guide local governments and solid waste departments.

---

[5]  In reply to WM Mobile's response, the Authority argues that WM Mobile did not present the best evidence available. The Authority argues that WM Mobile could have followed its expert's advice that a reliable way to determine the weight of the waste was to sample and weigh Gulf Hauling's trucks (doc. 159, p. 9).  The Authority suggests that as part of discovery, WM Mobile could have designated an expert to "at a minimum, look at enough of the trucks to determine approximately how full they are typically and watch enough of them unload so the expert could provide an estimate of what percentage of the loads were composed of which materials" and that "[w]eighing a sample of trucks would allow an expert to extrapolate the weight of a load on the various sized trucks." (doc. 259, p. 9-10).

Also, the conversion factors are based upon a cross-country sampling for waste management (doc. 261, p. 10).

Last, WM Mobile argues that its lost profit calculation includes "what its handling of the diverted waste would cost" and "also all other *fixed* costs associated with operating the landfill *at large*" (doc. 261, p. 11). WM Mobile argues that it made a revenue (what it would have received if the Authority had performed under the contract) minus costs (what the performance would have cost) calculation, and including these handling and processing costs for the diverted wastes and fixed costs, lowers its net profit per ton and provides a more conservative estimate of lost profits (Id., p. 11-12). WM Mobile argues that the costs that the Authority contends were excluded – Sales, General and Administrative costs – were minimal and also, not material to the lost profit calculation. (Id.).

As an initial consideration, the Court agrees that because WM Mobile seeks only general, expectancy damages, specifically, lost profits based on breach of the 1993 Operating Agreement, and not consequential damages, it need only submit to the jury the best evidence available, and that evidence must be sufficient to form a reasonable basis for the jury's decision. See Mannington Wood Floors, Inc. v. Port Epes Transport, Inc., 669 So. 2d 817, 822-8233 (Ala. 1995) (explaining the difference between lost profits that are " 'consequential' loss-of-profit damages", from lost profits that are general or expectancy damages that would place a party in the position it would have been if the contract had not been breached). Thus, WM Mobile is not subject to the heightened standard of "reasonable certainty." However, even if WM Mobile were subject to this standard, the evidence submitted to the jury was sufficient. The Alabama courts have explained that the " 'special proof requirements'" that "apply to consequential damages and not to general damages" are "embodied in the rule of 'reasonable certainty.'" MedPlus Properties v. Colcock Const. Group, Inc., 628 So. 2d 370, 376-377 (Ala. 1993). Specifically,

6

" ' "[T]he loss of profits must be the natural and proximate, or direct result of the breach complained of and they must also be capable of ascertainment with reasonable, or sufficient, certainty, or there must be some basis on which a reasonable estimate of the amount of the profit can be made; absolute certainty is not called for or required." '

Jostens, Inc. v. Herff Jones, LLC, No. 1180808, - - - S. 3d - - -, 2020 WL 1966831, at *10 (Ala. Apr. 24, 2020) (citations omitted).   The evidence presented to the jury – the Gulf Hauling invoices and testimony - provides "some basis on which a reasonable estimate of the amount of the profit can be made[.]" Id.

As required by Rule 50(b), the Court has considered all the evidence, and all logical inferences, in the light most favorable to the non-moving party, WM Mobile, and finds that the jury's verdict as to lost profits is supported by sufficient evidence.  The evidence as recounted in WM Mobile's response (doc. 261, p. 7-12) shows a legally sufficient evidentiary basis for the jury to find for WM Mobile on the claim for lost profits.  Accordingly, the Authority's renewed motion for judgment as a matter of law is denied.

With respect to the alternative Rule 59 motion for new trial, as required by the rule, the Court has considered the evidence favoring the jury's verdict as well as the evidence in favor of the Authority, as the moving party.  McGinnis, 817 F.3d at 1254 (citation omitted).  Again, the evidence as recounted in WM Mobile's response (doc. 261, p. 7-12) shows that the verdict is not against the great weight of the evidence. See Gill as Next Friend of K.C.R. 941 F.3d at 521 (the court may not grant a new trial on "evidentiary grounds, unless at a minimum, the verdict is against the great – not merely the greater – weight of the evidence.").

III. Illegality of certain paragraphs of the 1993 Operating Agreement

The Authority renews its Rule 50(a) motion in its Rule 50(b) motion as to WM Mobile's claim that the Authority breached the 1993 Operating Agreement by diverting yard waste (Claim

2).[6]  The Authority argues again that Paragraphs 1.32 and 5.2 of the 1993 Operating Agreement are

illegal, void ab initio, and unenforceable pursuant to state law; and therefore, it is entitled to

judgment as a matter of law in its favor as to this claim (docs. 256, 269).  In the reply, the Authority

appears to clarify that it is not moving pursuant to Rule 59 for a new trial as to this issue, stating

that "[a]s to the illegality of the Operating Agreement relating to yard waste, this Court's ruling was

made in response to the SWDA's Rule 50(a) Motion at the close of the Plaintiff's case (Doc. 248),

and is ripe for consideration in the SWDA's post judgment motion" (doc. 269, p. 2).   In conclusion,

the Authority requests that the Court "enter a Judgment in its favor as a matter of law" (Id., p. 15).

      The Authority argues that when the 1992 Comprehensive Solid Waste Management Plan

was approved by the Alabama Department of Environmental Management, it "became state law

relating to the content of the Plan" (doc. 256, p. 1, 3, 17-21).  The Authority points out that the 1992

Plan stated that yard wastes were currently disposed at the Bates Field Landfill, and would be

disposed at a relocated Bates Field Landfill in the future. Thus, the Authority argues that the

paragraphs of the 1993 Operating Agreement which indicate this waste should be disposed at the

Chastang Landfill, are inconsistent with the Plan and thus, inconsistent with state law.  The

Authority argues that since illegal contracts cannot be enforced, it is entitled to judgment as a matter

of law.

      WM Mobile argues that because the 1992 Plan was not in evidence and no argument was

presented to the jury, the Rule 50(b) and Rule 59 motions are improper. WM Mobile argues that

these rules and case law interpreting the rules, require an analysis of the evidence.  WM Mobile also

---

[6]  The Authority presented this argument in its Rule 50(a) motion at the close of WM Mobile's
evidence (doc. 247).  Other arguments were denied for reasons set forth on the record (June 17,
2020, Transcript pgs. 143-144). The Court stated its disagreement with this argument and set forth
specific reasons in a written order (doc. 248). The Authority renewed this argument in its Rule 50(a)
motion at the close of all evidence (doc. 249).  The motion was denied for reasons set forth on the
record (June 17, 2020, Transcript pgs. 214-215).

argues that the Authority cited case law identifying certain grounds for granting a motion for new trial – damages are excessive, trial was not fair, questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury – but then raises no argument as to how these grounds apply in this action. WM Mobile points out that the Authority simply argues that 1993 Operating Agreement is inconsistent with the 1992 Plan  (doc. 261, p. 3, 16-19).

Alternatively, WM Mobile argues that the 1993 Operating Agreement is consistent with the 1992 Plan.  WM Mobile points out that the 1992 Plan provides for contracts with private contractors such as WM Mobile, that the Alabama legislature did not deem the entire contents of local waste management plans as binding.  WM Mobile also points to two circumstances that require amendment of the 1992 Plan and changing the disposal location between existing facilities is not among the specified circumstances. WM Mobile notes that the City of Mobile did not amend the 1992 Plan for other changes, such as the 1997 award to Gulf Hauling to dispose of  construction and demolition and yard waste at Dirt, Inc.'s landfill instead of the Bates Field Landfill, or closing a transfer station which was identified in the Plan (Id., p. 20-26).

The Court previously addressed substantially the same issue when the Authority raised its Rule 50(a) motions (doc. 248).  The Authority now raises the issue in the renewed Rule 50(b) motion. Rule 50(b) provides that  "[i]f the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(b). Thus, the Authority again seeks a decision on the legal questions raised in its Rule 50(a) motions, specifically, that certain Paragraphs of the 1993 Operating Agreement are illegal, void and unenforceable against it.

The Court previously explained that under Alabama law, the illegality of a contract may be raised at any time. (doc. 248 "Under Alabama law, '[b]ecause an illegal contract is void ab initio

and will not support a cause of action or a judgment, a party can raise illegality of a contract at any time.'" <u>Jackson v. Brewer</u>, 257 So. 3d 310, 313 (Ala. Civ. App. 2017)). Also, under Alabama law, construction of contracts, and their legal effect are questions of law for the court. <u>See McDonald v. U.S. Die Casting & Dev. Co</u>., 585 So.2d 853, 855 (Ala. 1991) ("If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court ...."). However, the Court has considered the Authority's arguments and finds no basis to reverse its earlier opinion that Paragraphs 1.32 and 5.2 are not inconsistent with the 1992 Plan, not adverse to the enabling statute for solid waste disposal authorities, and therefore not in violation of state law. Accordingly, the Authority's Rule 50(b) motion as to this issue, is denied.

      IV. <u>Testimony of Dale Seekely, WM Mobile's expert witness</u>

      The Authority argues that Seekely's testimony as to the reasonableness of WM Mobile's witness Ronnie Griffing's methodology to calculate lost profits should have been excluded because it was unreliable and would not assist the trier of fact. The Authority argues that Seekely did not independently validate or audit the financial information upon which Griffing based his calculation, but instead "simply assumed the numbers were correct" (doc. 256, p. 22). The Authority argues that the testimony of a damage expert who fails to make "independent research into the reliability of his assumptions" should be excluded. (Id.)

      WM Mobile responds that the testimony was admissible and that the Authority's criticisms go to the weight of the evidence, not the admissibility (doc. 261, p. 26-30). WM Mobile also argues that an expert may rely on information provided, such as Griffing's calculations of lost profits, without independently verifying the accuracy. WM Mobile points out that Seekely was not asked to separately analyze the financial information and calculate the lost profits, but instead, was asked to determine whether the methodology of Griffing's calculation and the expenses he excluded were reasonable.

Substantially the same arguments were raised in the Authority's <u>Daubert</u> motion to exclude Seekely's opinion (docs. 137, 138).  The Court heard the motion and found that Seekely was qualified to give an opinion as to the acceptability of the methodology used to calculate lost profits. (<u>See</u> <u>Daubert</u> hearing transcript, p. 67).

The Authority did not raise this argument in its Rule 50(a) motions (docs. 247, 249) (Transcript, June 17, 2020).  Thus, it cannot assert these arguments as grounds to support the Rule 50(b) renewed motion for judgment as a matter of law. Therefore, the Court will consider this argument as made in support of the Authority's Rule 59 motion for a new trial.  <u>See Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.</u>, No. 18-13765, 2020 WL 1982995 (11th Cir. Apr. 27, 2020) ("On appeal, Marjam mainly challenges the District Court's denial of its Rule 50 "and/or" Rule 59 motion. As a preliminary matter, we note that Marjam cannot challenge issues under Rule 50(b) that were not raised in its Rule 50(a) motion at the close of the evidence and prior to the case being submitted to the jury. . . . At the close of evidence, Marjam argued Pliteq failed to present sufficient evidence of causation, but did not challenge the exclusion of the live testimony of Ms. Yankee, Mr. Young, or Mr. Brooks. We will therefore decide all arguments, other than Marjam's challenge to the sufficiency of the evidence, as motions made under Rule 59.")

As previously stated, a party may move for a new trial under Rule 59 on basis that "the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair ... and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence …" <u>McGinnis,</u> 817 F.3d at 1254. The Eleventh Circuit has explained that a "trial court's decisions regarding the admissibility and reliability of expert testimony also are reviewed for abuse of discretion, . . . and will only be reversed if they are 'manifestly erroneous.'" <u>Taylor v. Mentor Worldwide LLC</u>, 940 F.3d 582, 594 (11th Cir. 2019)

(citations omitted) (addressing defendant's argument pursuant to <u>Daubert</u> that it is entitled to a new trial because the district court abused its discretion in admitting expert testimony).

At trial, Seekely testified that WM Mobile's attorneys asked him "to look at a calculation for lost profits that was done by Ronnie Griffing, and to look at that methodology and say that's a reasonable way of calculating lost profits" but not to perform the lost profits calculation.  Seekely testified that he was provided "with the actual calculation that was done by Ronnie Griffing and then they provided me with financial statements from the Waste Management financial systems so that I could look at what operating expenses were included in the calculation"  (Trial transcript, p. 34, June 17, 2020). Ultimately, Seekely testified that the methodology applied by Griffing, including the exclusion of certain costs, was a reasonable method in the waste management industry to calculate lost profits.

The Court has considered the parties' arguments and finds no substantial error in its earlier opinion as to the admissibility of Seekely's testimony regarding lost profits.  <u>See</u> <u>McGinnis,</u> 817 F.3d at 1254.  Accordingly, the Authority's motion is denied.

**DONE** this the 20th day of November 2020.

<u>s/ Kristi K. DuBose</u>
KRISTI K. DuBOSE
CHIEF UNITED STATES DISTRICT JUDGE
