IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WM MOBILE BAY ENVIRONMENTAL CENTER, INC., ) ) ) Plaintiff, ) ) v. ) ) THE CITY OF MOBILE and THE CITY ) OF MOBILE SOLID WASTE DISPOSAL ) AUTHORITY, ) ) Defendants. ) | CIVIL ACTION NO. 18-00429-KD-MU |

## **ORDER**

This action is before the Court on limited remand from the Court of Appeals for the Eleventh Circuit (doc. 293). Specifically, the action was remanded upon finding that "[t]here was no factual finding of diversity in the court below and there is insufficient evidence in the record for [the Eleventh Circuit] to decide the issue on appeal" and "for the limited purposes of developing the record and making findings of fact with regard to the citizenship of the parties." (Id., at p. 7). The Eleventh Circuit further stated that:

> If WM Mobile carries its burden in establishing that its principal place of business is in Mississippi, we retain jurisdiction to consider the remaining issues on appeal. Conversely, if WM Mobile does not carry its burden, there is no federal jurisdiction, and the district court should dismiss this case.

(Id.).

Plaintiff WM Mobile Bay Environmental Center, Inc. filed its brief and evidence in support of its Mississippi citizenship (docs. 295-296). The City of Mobile Solid Waste Disposal Authority filed its objection, response, evidence in support, motion to strike certain exhibits, and request for limited discovery (docs. 298-299). WM Mobile filed its reply (docs. 301-302). On December 22, 2021, the Court heard the parties' jurisdictional arguments, the Authority's motion

to strike, and the Authority's request for limited discovery.

For reasons set forth on the record, the Court denied the Authority's motion to strike (doc. 299), granted the Authority's request for limited jurisdictional discovery (Id.), and allowed supplemental briefs (doc. 305).  The limited discovery period ended, and the parties filed their supplemental briefs and evidence (docs. 308, 309, 322, 323, 325, 326, 327).[1]

The record having been fully developed, and for the reasons set forth herein, the Court finds as follows:

I. Citizenship at the time of filing the complaint.

"[D]iversity jurisdiction is determined at the time of filing the complaint." PTA-FLA, Inc. v. ZTE USA, Inc., 844 F. 3d 1299, 1306 (11th Cir. 2016); Grupo Dataflux v.Atlas Global Group, L.P., 541 U.S. 567, 570, 124 S. Ct. 1920, 1924 (2004) (diversity jurisdiction depends on the state of facts in existence at the time the complaint is filed).  The complaint was filed on October 4, 2018 (doc. 1).

A. The City of Mobile.

Defendant City of Mobile is a municipal corporation located in Mobile County in the State of Alabama. (Doc. 61, p. 1, at ¶ 2; Doc. 65, p. 1, at ¶ 2 (Answer to amended complaint).  On October 4, 2018, City of Mobile was a citizen of the State of Alabama.

B. The Authority.

The Authority was created as an Alabama non-profit corporation pursuant to Ala. Code §§ 11-89A-1 *et seq.* and was incorporated in Alabama on May 8, 1985. (See Answer, doc. 64, p. 2, at ¶ 3; see also Certificate of Incorporation, and Articles of Amendment to the Articles of Incorporation, Doc. 220-1). On October 4, 2018, the Authority was a citizen of the State of Alabama.

---

[1] The Authority's motion for leave to file a reply (doc. 324) is GRANTED.

C. <u>WM Mobile Bay</u>.

Pursuant to 28 U.S.C. 1332(c)(1), for purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business[.]". The parties do not dispute that WM Mobile Bay's predecessor was incorporated in Delaware, and that on October 4, 2018, WM Mobile Bay was a citizen of Delaware (Doc. 61, 64, 65).

However, the parties dispute the location of WM Mobile's principal place of business. WM Mobile asserts that as of October 2018, its principal place of business was Madison, Mississippi. The Authority asserts that it was at the Chastang Landfill in Alabama.

In <u>Hertz v. Friend</u>, 559 U.S. 77, 130 S. Ct. 1181 (2010), the Supreme Court concluded that "the phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities. Lower courts have often metaphorically called that place the corporation's 'nerve center.'" 559 U.S. at 80-81, 130 S. Ct. at 1186.  The Supreme Court further explained that "the 'nerve center' will typically be found at a corporation's headquarters." 559 U.S. at 81, 130 S. Ct. at 1186. More specifically,

> "We conclude that principal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. And in practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination ... and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion).

<u>Hertz Corp.</u>, 559 U.S. at 92–93.[2]  The nerve center or principal place of business is not

---

[2] "A 'nerve center' approach, which ordinarily equates that 'center' with a corporation's headquarters, is simple to apply *comparatively speaking*. The metaphor of a corporate 'brain,' while not precise, suggests a single location. By contrast, a corporation's general business
(Continued)

3

necessarily where "the bulk of a company's business activities visible to the public take place" and the direction, control, and coordination of those business activities may occur from a location in another state. Hertz Corp., 559 U.S. at 96.

Also, the Supreme Court further explained that "[w]hen challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof." Id. at 1194-95. WM Mobile has the burden of providing evidence to support is position that its principal place of business or nerve center was in Madison, Mississippi in October 2018 when this action was filed. OSI, Inc. v. United States, 285 F.3d 947, 951 (11th Cir. 2002) ("In the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists."). The Court of Appeals has found that WM Mobile's sworn response to an interrogatory stating that its principal office was in Madison, Mississippi was not sufficient (doc. 293, p. 5-6).

With this decision in mind, the Court considers the following evidence that WM Mobile's principal place of business or nerve center was in Madison, Mississippi in October 2018.

1. David Myhan, Ronnie Griffing, and Domenica Farmer

WM Mobile argues that the relevant inquiry is not where WM Mobile's primary business operations are performed, i.e., the Chastang Landfill, but instead where those operations are directed, controlled, and coordinated. WM Mobile argues that in 2018, Griffing and Myhan were its two highest level officers who controlled, directed, and coordinated its activities at the

---

activities more often lack a single principal place where they take place. That is to say, the corporation may have several plants, many sales locations, and employees located in many different places. If so, it will not be as easy to determine which of these different business locales is the 'principal' or most important 'place.'" Hertz Corp., 559 U.S. at 95, 130 S. Ct. at 1193–94 (emphasis in original).

Chastang Landfill, and at that time, they lived in Mississippi and worked at the WM Mobile headquarters in Madison, Mississippi. Thus, WM Mobile argues that the headquarters in Madison, Mississippi was its principal place of business and nerve center (doc. 296, 302, 326).

In support, WM Mobile cites to Griffing's declaration (doc. 295-3) and excerpts from his November 2019 deposition (doc. 295-1), excerpts from Myhan's December 2019 deposition (doc. 295-2), excerpts from Farmer's December 2019 deposition (doc. 295-4) and Farmer's 2021 declaration (doc. 301-1), Molly Escalante's sworn interrogatory responses (doc. 116-5), and WM Mobile's second supplemental responses to the Authority's post-hearing interrogatories requesting the business and residential addresses of WM Mobile's officers, directors, and employees (doc. 322-5).[3]

As of October 2018, Myhan was the Vice President and Manager of the Gulf Coast Market Area which includes the Chastang Landfill in Alabama and held this position from 2012 to December 31, 2018 (doc. 295-2; doc. 322-5, p. 2). He resided in Madison, Mississippi in 2018 (doc. 295-2, p. 3). At his Rule 30(b)(6) deposition in 2019, he confirmed his prior affidavit testimony that "Madison, Mississippi is WM Mobile Bay's headquarters and is the place where WM Mobile Bay's officers direct, control, and coordinate WM Mobile Bay's activities" and "is also the place where WM Mobile Bay's accounts are kept" (Id., at 8-9). He also confirmed that

---

[3] WM Mobile provided "both the business addresses and residence addresses . . . effective as of October 4, 2018, based on company records." (doc. 322-5, p. 1). Griffing and Myhan had business addresses in Madison, Mississippi and residential addresses in Brandon, Mississippi and Madison, Mississippi, respectively (Id. p. 2). Of the nineteen WM Mobile officers and directors identified, one Vice President Assistant Secretary had a personal residential address in Wilsonville, Alabama with a business address in Franklin, Tennessee (Id.). All the employees have Alabama residential addresses (Id., p. 3-4). All were heavy equipment operators or laborers, except Walter W. Polk, Jr. - Landfill Operations Manager (September 2018 to present), Vernon Dean – Landfill Operations Manager (2006 to 2018), and Joyce M. Green – Senior Landfill Operations Specialist (Id.).

"WM Mobile Bay's operations are directed, controlled and coordinated out of WM Mobile Bay's headquarters in Madison, Mississippi" and that "[a]ll major decisions, such as budgeting, pricing, regulatory compliance, long-term planning for capital improvements, et cetera, are directed, controlled, and coordinated by the corporate officers at the Madison, Mississippi, headquarters." (Id., p. 8-9).  Myhan testified that he made the decision to seek reimbursement from the Authority and the decision to file this lawsuit in 2018 (Id., p. 11).[4]

Griffing served as a Rule 30(b)(6) corporate representative (doc. 285, trial transcript). In his declaration, Griffing stated that he was the Gulf Coast Area Controller since 2009 and his title was changed in 2019 to Gulf Coast Market Area Director of Finance and Business Partner (doc. 295-3, p. 2; see also 295-1, deposition). He has "financial oversight for Waste Management subsidiary WM Mobile … which manages and operates the Chastang Landfill …" (doc. 295-3, p. 2).  He stated that in 2018, "the primary officers with decision-making authority for all Waste Management subsidiaries in the Gulf Coast Market Area, including WM Mobile, were the Area Vice President [Myhan] and the Controller/Area Director of Finance [Griffing]" (doc. 295-3, p. 3).  Griffing testified that as Business Partner for the market area, his responsibilities include financial analysis and decision-making strategy with the Area Vice President (doc. 295-1, p. 3-4). Griffing was responsible for the budget, accuracy of the financial statements, and "analysis and account reconciliations" (Id., p. 5).  He also participated in discussions with other departments to determine the rate and decisions involving unpaid accounts of more than $10,000 would come to him (Id., p. 6).

Griffing stated that he lived in Brandon, Mississippi in 2018, and that his residence was 15

---

[4] Myhan testified that WM Mobile's in-house counsel in October 2018, worked in Atlanta, Georgia (Id., p. 7).

miles from his office at the WM Mobile headquarters in Madison, Mississippi (doc. 295-3). In 2018, he was "responsible for reviewing and approving financial reports for WM Mobile" and he "did so from [his] office in Madison, Mississippi" (Id.). He was "responsible for reviewing and approving" the "Landfill Workbook and 5-Year Capital Plan" (the "primary long-range planning tools for WM Mobile's operation of the Chastang Landfill") "with the Area Vice President, and [they] did this in the Madison, Mississippi Office. (Id.).

Griffing stated that in 2018, Waste Management, Inc., WM Mobile's parent company,[5] performed certain corporate functions for WM Mobile. Specifically, Waste Management maintained the corporate books, records, and files, and personnel files at its office in Houston, Texas (doc. 295-3). Also, Griffing stated that payroll was "handled out of" Waste Management's Houston, Texas office (doc. 295-1). Griffing attached to his declaration, a copy of WM Mobile's business entity record, as a foreign corporation, filed with the Alabama Secretary of State. The document shows WM Mobile's principal address in Madison, Mississippi (doc. 295-3). Griffing stated that the address was the same as the office where he performed his "functions, along with the Gulf Coast Area Vice President" (doc. 295-3).

At her Rule 30(b)(6) deposition in 2019, Domenica Farmer testified that she became the Area Vice President of the Gulf Coast Area on January 1, 2019 (doc. 295-4). She identified her current mailing address as that of WM Mobile's headquarters in Madison, Mississippi. (Id., p. 3). Farmer also testified that she maintained two residences – Clinton, Mississippi (approximately 18 miles from Madison, Mississippi) and Niceville, Florida and that the latter was her permanent

---

[5] According to the Corporate Disclosure Statement, "WM Mobile Bay is a wholly-owned subsidiary of Waste Away Group, Inc., which is a wholly-owned subsidiary of Waste Management Holdings, Inc., which is a wholly-owned subsidiary of Waste Management, Inc." (doc. 17).

residence (Id.).[6]  In her declaration, Farmer stated that she also holds the position of President of WM Mobile Bay, and that in 2021, she made the decision to move WM Mobile's headquarters from Madison, Mississippi to Destin, Florida (doc. 301-1).

Molly Escalante verified and signed the interrogatory responses in April 2019 (doc. 116-5). Escalante is Waste Management's Subsidiary Manager (doc. 116-5).  WM Mobile is a subsidiary of Waste Management.  Escalante verified that WM Mobile's "principal office is located at … Madison, Mississippi" and that it also "maintains an office at the Chastang Landfill." (Id. at p. 3).

    2. The Authority's rebuttal

    A. "WM Mobile has failed again to provide competent proof that its principal place of business is located anywhere other than Alabama."

The Authority argues that WM Mobile has not submitted uncontested, competent proof that its principal place of business is in Madison, Mississippi (doc. 299).  The Authority argues that the "inconsistencies" and "discrepancies in WM Mobile's testimony offered to show its principal place of business is in Mississippi leaves (and even creates) significant uncertainties regarding whether WM Mobile's direction, control, and coordination of its business activities occur in Alabama" (Id., at p. 10).  The Authority also argues that there is no "evidence of any director or officers meeting or other activities in Madison that directed or controlled the activities of the Chastang Landfill", that "the office in Madison was nothing more than an address".  The Authority concludes that WM Mobile is merely an entry on the Waste Management balance sheet (doc. 323).

---

    [6] Farmer also testified that prior to October 2018, when this action was filed, she was Area Sales Director (doc. 327-1, p. 51).  In that position, she went to the office in Madison, Mississippi on a quarterly basis – "Sometimes less, sometimes more" (Id.).

First, the Authority argues that "there is no record that WM Mobile had an office or ran a business in Madison, Mississippi in 2018" (doc. 299, p. 10). In support, the Authority provides an affidavit from its private investigator stating that in October 2021, the signage identified Waste Management Gulf Coast as the occupant, but the office was vacant (doc. 298-1; doc 297, DVD). However, the status of the office in October 2021 is not relevant and does not rebut WM Mobile's evidence that in 2018 it had an office in Madison, Mississippi.[7] Farmer testified that she became the Area Vice President on January 1, 2019 (doc. 327-1, p. 11) and stated that she moved the office from Madison, Mississippi to Destin, Florida when the lease expired in August 2021 (doc. 301-1, Farmer declaration). Nothing in Farmer's declaration changes the sworn testimony by Myhan, Griffing, and Farmer that in October 2018, the office was in Madison, Mississippi.

Second, the Authority argues that WM Mobile was not licensed by the City of Madison or registered to conduct business in Mississippi in 2018 (doc. 299). From this, the Authority reasons that WM Mobile could not have had its principal place of business or nerve center in Madison. In support, the Authority provides an affidavit from its private investigator stating that he researched the records of the Mississippi Secretary of State and found that "at no time has WM Mobile … been registered as a Corporation in the State of Mississippi" (doc. 298-1, p. 2). He also stated that WM Mobile did not obtain a privilege license to operate a business in Madison, Mississippi (Id.).

---

[7] The Authority argues that the office in Destin, Florida is "only 1500 square feet, leased for 3 years, and has no phone number assigned to it" (doc. 323, p. 5). The Authority also points out that Farmer did not report the move to the Alabama Secretary of State until after "the vacancy of the Madison office was videoed and submitted to this Court" (Id.). From this, the Authority argues that the Destin office, as the Madison office, is not a "functioning headquarters that would qualify as a principal place of business" (Id.).

9

In regard to this issue, the Court allowed supplemental briefing as to whether WM Mobile was required to register or obtain a privilege license (doc. 305). The Authority submitted its supplemental brief and identified the issue as whether WM Mobile "was required to qualify to do business in the State of Mississippi as well as in Madison, Mississippi" (doc. 308). In support of its position that WM Mobile has never been licensed to conduct business in Madison, the Authority provides a letter from the City of Madison wherein the City Attorney states that the records search "did not identify any records responsive" to the Authority's request for licensing records (doc. 308-1). The Authority also states that WM Mobile was not registered as a corporation in Mississippi. In support, the Authority provides an affidavit from its private investigator stating that he researched the records of the Secretary of State for Mississippi and found that "at no time has WM Mobile … been registered as a Corporation in the State of Mississippi" (doc. 298-1, p. 2). From this, the Authority argues that WM Mobile's failure to obtain a privilege license as required by Miss. Code Ann. §§ 27-17-9(1), -5(2) & -3, and failure to comply with Miss. Code Ann. § 79-4-15.01(a) and obtain a certificate of authority is evidence that Madison was not WM Mobile's principal place of business.

WM Mobile responds WM Mobile was not required to register or obtain a business license. Specifically, the "Mississippi Code requires a corporation to obtain a 'certificate of authority from the Secretary of State' before it 'transact[s] business' in Mississippi" and that certain "'activities . . . do not constitute transacting business.'" (doc. 309, p. 2, quoting Miss. Code Ann. § 79-4-15.01(a)&(b)). WM Mobile argues that its activities in Mississippi, which "consisted solely of its high-level officers making big-picture decisions for the corporation and managing internal corporate affairs", fall within the certification exception for "holding meetings of the board of directors or shareholders or carrying on other activities concerning internal

10

corporate affairs." (doc. 309, citing Miss. Code Ann. § 79-4-15.01(b)(2); doc. 296, p. 3-4)). WM Mobile also points out that the list of activities is "'not exhaustive'" and, therefore, even if its activities "did not quite fit in that category" it was not required to obtain a certificate of authority because it did not "otherwise transact business in Mississippi" (doc. 309, citing Miss. Code Ann, § 79-4-15.01(c)).

Moreover, WM Mobile agrees that Miss. Code Ann, § 27-17-9 requires a local privilege license to engage in business within a municipality. However, WM Mobile argues that it was not required to do so, because it did not engage in any business in Madison. WM Mobile argues again that its internal corporate activities which directed its business operations in Alabama were not within Mississippi's definition of transacting or engaging in business within the State.

A privilege license and certificate of authority are required for corporations that transact business within Madison and within Mississippi. However, the undisputed evidence shows that WM Mobile did not transact business within the City or State. There is no dispute of fact that WM Mobile's business transaction – operating a solid waste disposal facility – occurred in Alabama. Transacting business outside of the state where the principal place of business or nerve center is located is expressly contemplated in <u>Hertz Corp. v. Friend</u>, 599 U.S. 77, 96, 130 S. Ct. 1191, 1194 (2010).[8] Also, the evidence shows that WM Mobile's activities in Mississippi in October 2018 were consistent with the statutory certification exception for "holding meetings of the board of directors or shareholders *or carrying on other activities concerning internal corporate affairs.*" Miss. Code Ann. § 79-4-15.01(b)(2) (emphasis added). Therefore, WM Mobile was not required to obtain either a certificate of authority or a privilege license, and the

---

[8] The Court explained that even "if the bulk of a company's business activities visible to the public take place in New Jersey," if "its top officers direct those activities just across the river in New York, the 'principal place of business' is New York." 599 U.S. at 96.

absence of same is not evidence to rebut WM Mobile's assertion that it is a citizen of Mississippi.

Third, the Authority argues that "Domenica Farmer's claim that she resides in Mississippi is false", and that "[s]he resides in Florida" (doc. 299, p. 12). The Authority cited Farmer's 2019 deposition testimony. Farmer testified that "I actually travel quite a bit, and so I live - - I have a residence at 128 Farmer Drive, in Clinton, Mississippi, where I travel to, and I also have a residence at 145 Mulry Drive in Niceville, Florida" (doc. 295-4, p. 3). She also testified that "Niceville, Florida, is [her] primary address." (Id.). In her 2021 declaration, Farmer states that "[i]n 2018, I had two residences. My primary residence is 145 Mulry Drive, Niceville, Florida. I also maintain a residence at 128 Farmer Drive, Clinton, Mississippi, which is approximately 18 miles from Madison, Mississippi." (doc. 301-1). The Authority did not present any evidence to support its position that Farmer's testimony was "false".

The Authority also argues that "over [Farmer's] career with Waste Management, she didn't really have an office and conducted most of her Waste Management business in her car" (doc. 299, p. 12, citing (doc. 298-10, p. 3). Farmer testified that her employment requires her to travel (doc. 295-4, p. 3). But, as to conducting "business in her car", Farmer was testifying specifically about her five-year term of employment as Director of Sales for Waste Management of Louisiana, which at that time covered coastal Louisiana, Mississippi, Alabama, and the Florida panhandle. She testified: "A. I had many offices actually, all across those states that you just mentioned. Q. Where was your primary office if you had one. A. I really didn't have one. Actually, it was my car. I did a lot - - I still do quite a bit [of] travel" (doc. 298-10, p. 3).

Additionally, Farmer testified that she was the Area Sales Director when this action was filed in October 2018, and in that position, she went to the office in Madison on a "quarterly

12

basis" – "Sometimes less, sometimes more" (doc. 327-1, p. 51). During her deposition in March 2022, Farmer testified that she had worked for Waste Management for 30 years, and had "held positions such as sales representative, sales supervisor, district manager, senior district manager, area sales director, and area vice president" (doc. 327-1, p. 37). That Farmer testified that she traveled "quite a bit" and had multiple offices while she was Director of Sales, does not rebut WM Mobile's evidence that the corporate office was in Madison, Mississippi in 2018.

Fourth, the Authority argues that Griffing's post-trial declaration is inconsistent with his trial testimony (doc. 299, p. 6-7).[9] In his post-trial declaration, Griffing states that he reviewed and approved the Chastang Landfill financial reports "from my office in Madison, Mississippi" (doc. 295-3). The Authority argues that at trial, Griffing testified that he "analyzes the WM Mobile financial date 'at the Chastang Landfill'" and "that he does so 'regularly'" (doc. 299, p. 6). At trial, Griffing testified as follows:

> Q. And we've heard a couple of the prior witnesses also tell us that you do keep track of costs according to business unit; is that correct?
>
> A. That's absolutely correct.
>
> Q. Okay. And so did you analyze the profitability by comparing those revenues against the costs that you are incurring at that business unit?
>
> A. Oh, absolutely. The profit margin, unit margin, that's one of the metrics. There are a number of metrics that we measure. Profitability, unit margin, EBITDA margins. . . .
>
> Q. Is the Chastang Landfill one of the business units within your area of responsibility?
>
> A. Yes, it is.

---

[9] The Authority raised this alleged inconsistency as part of its motion to strike Griffing's declaration (doc. 299, p. 5-6). The motion to strike was denied (doc. 305).

> Q. And so do you regularly engage in analysis of the financial data at the Chastang Landfill?
>
> Yes. We review all business units, and Chastang would be one of those for sure.
>
> Q. Okay. Now, Chastang is a business unit, the Chastang Landfill. Is it operated by a company called WM Mobile Bay Environmental Center, Inc.?
>
> A. Yes, it is.
>
> Q. We've been calling that WM Mobile Bay. Does that – does WM Mobile Bay have any other business units?
>
> A. It does not. . . .
>
> Q. And so when you are analyzing data for WM Mobile Bay, are you analyzing data that's solely related to the Chastang Landfill?
>
> A. Yes.

(Doc. 287, p. 174).

Reading Griffing's testimony in context indicates that he was not testifying as to the location of his analysis, but instead the source of the data that he analyzed. In other words, the financial data for the Chastang Landfill.

Fifth, the Authority argues that "[c]ontrary to Mr. Griffing's Declaration, he is not, nor was he in 2018, an officer or director of WM Mobile." (doc. 299, p. 12). The Authority has misread the Declaration. Griffing stated that he was the "Gulf Coast Area Director of Finance and Business Partner for Waste Management" and in this role, he has "financial oversight for Waste Management subsidiary WM Mobile …" (doc. 295-2, p. 2). He also stated that in 2018, his title was Controller for the Gulf Coast Area (Id). And that in 2018, "the primary officers with decision-making authority for all Waste Management subsidiaries in the Gulf Coast Market

Area, including WM Mobile, were the Area Vice President and the Controller/Area Director of Finance" (Id., p. 3). While the use of "officers" may not have been accurate, the evidence shows that financial coordination, direction, and control was performed by Griffing. Elite Integrated Med., LLC v. New World Communications of Atlanta, Inc., 2021 WL 1663444, at *9 (N.D. Ga. Apr. 28, 2021) ("Even if the local executives — Mr. Schneider, Mr. Holmes, Mr. Mannix, Mr. Stuckey, Mr. Snyder, and Mr. Mazur — are not, as Ms. Forrest testified, 'officers' of NWCA, the evidence shows that the core business activities of NWCA were being conducted and directed by them and from Atlanta").

Sixth, the Authority argues that Griffing's declaration is "suspect" because he did not give a specific date or month when he reviewed the five year plan with an unnamed Area Vice President in Madison, and "questionable" because the "5-year operational plans are maintained on Waste Management's servers and can be accessed remotely from anywhere." (doc. 299, p. 13; (doc. 323, "The workbook described by him is maintained on a share drive so it could be assessed from any location"). The Authority asserts that "there is no evidence the plan referred to by Griffing was actually in Mississippi." (Id.). The Authority also argues that Griffing's involvement – one meeting with Myhan and review of workbooks or spreadsheets prepared by others - was simply oversight, and that control of an entity's activities requires more than oversight (doc. 323).

The lack of a specific date or month of a meeting does not render the declaration suspect. Also, the evidence shows that Myhan was the only Area Vice President in 2018 (doc. 295-2). Thus, failing to name Myhan in the Declaration does not render it suspect. Moreover, the inquiry is where the nerve center or principal place of business is located. And storage of the plan on the server which "can be accessed remotely from anywhere" does not undermine

15

Griffing's declaration that he performed his work at the office in Madison.[10] Additionally, as Controller or as Area Finance Director, Griffing would be expected to review and analyze the work product of other employees. Griffing's testimony at trial as the Rule 30(b)(6) representative as well as his deposition testimony indicates that his purpose was more than simple oversight.

Seventh, the Authority argues that Myhan, the Area Vice President in 2018, testified that "WM Mobile did not have an officer or director meeting during his tenure" (doc. 299, p. 13). Myhan testified that he did not attend any officers or directors meetings, and did not know if any such meetings were held (doc. 298-16, p. 4-5). But the nerve center or principal place of business test requires an inquiry into "the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination ... and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." Hertz Corp., 559 U.S. at 92–93. Thus, Myhan's failure to attend meetings and his lack of knowledge as to whether such meeting may have been held, does not undermine his testimony that the office

---

[10] The Authority states that "There is no evidence that the plan referred to by Griffing was actually in Mississippi" (doc. 299, p. 13). The plan does not have to be "in Mississippi" for Griffing to review it at his office in Madison. This sort of remote access issue was foreseen in Hertz. The Court explained: "We recognize that there may be no perfect test that satisfies all administrative and purposive criteria. We recognize as well that, under the 'nerve center' test we adopt today, there will be hard cases. For example, in this era of telecommuting, some corporations may divide their command and coordinating functions among officers who work at several different locations, perhaps communicating over the Internet. That said, our test nonetheless points courts in a single direction, toward the center of overall direction, control, and coordination. Courts do not have to try to weigh corporate functions, assets, or revenues different in kind, one from the other. Our approach provides a sensible test that is relatively easier to apply, not a test that will, in all instances, automatically generate a result." Hertz Corp. 559 U.S. at 95–96, 130 S. Ct. at 1194.

in Madison, Mississippi was the place where he worked and the place from which he directed, controlled, and coordinated the activities of WM Mobile.

B. "WM Mobile's 'nerve center' is either at the Chastang Landfill in Mt. Vernon, Alabama, or Waste Away's Headquarters in Theodore, Alabama - - not Mississippi."

The Authority argues that the real nerve center or principal place of business is at the Chastang Landfill or in Theodore, Alabama.[11] In support, the Authority identifies employees[12] of Waste Management who work at the Landfill and manage the day-to-day operations – Dean Brown, Director of Landfill Operations; Walter W. Polk, Jr., Landfill Manager; and Joyce Green,[13] Senior Landfill Operations Specialist – all of whom live in Alabama (doc. 299, doc. 323). And Michelle Lersch, the environmental protection manager for the Landfill, who lives in Alabama, is employed by Waste Management, and works out of subsidiary Waste Away Group, Inc.'s headquarters in Theodore, Alabama. The Authority argues that these individuals control, direct, and coordinate the day-to-day activities at the Chastang Landfill, and therefore, the real principal place of business or nerve center of WM Mobile, is in Alabama.

As further evidence that WM Mobile is an Alabama citizen, the Authority argues that

---

[11] As further evidence that "WM Mobile was not controlled or directed from Madison or any other location outside of Alabama", the Authority points out that fuel surcharge fees, environmental fees, regulatory cost recovery fees "are globally determined by Waste Management's Houston Office" and that invoices for WM Mobile "like all Waste Management entities, were also paid from Houston" (doc. 323, p. 3-4, 10). Assuming the Authority is correct, the fact that Waste Management performs certain functions for WM Mobile is not evidence that WM Mobile's nerve center or principal place of business is not in Madison, Mississippi, and certainly doesn't support the Authority's position that WM Mobile's nerve center is in Alabama.

[12] The Authority also argues that WM Mobile does not have any employees because all the employees are paid by USA WM Resources and that its corporate activities are performed by persons employed by other Waste Management entities (doc. 323, p. 3-7).

[13] Green has also been identified as the scale operator (doc. 299, p. 16).

Waste Away Group, Inc., the sole shareholder of WM Mobile, is an Alabama corporation with its headquarters in Theodore, Alabama and that Waste Away is the lessee, operator, and entity in actual control of the Chastang Landfill. The Authority also points out that WM Mobile does not have a bank account and its immediate parent, Waste Away, an Alabama corporation, makes certain payments on behalf of WM Mobile.

However, the jurisdictional analysis requires more than the location of day-to-day operations.  Elite Integrated Med., LLC v. New World Commc'ns of Atlanta, Inc., 2021 WL 1663444, at *8 (N.D. Ga. Apr. 28, 2021) ("Here, the Court does not focus on the locus of the day-to-day activities or daily management, but instead finds that the individuals making the significant corporate decisions and directing NWCA's policies and operations are directing NWCA from Atlanta."); Cali v. Joe Ryan Enterprises, Inc., 65 F.Supp.3d 1288. 1294 (M.D. Ala. 2014) ("Defendants point out correctly that, under the nerve center test, a 'corporation's day-to-day operations are not relevant to the nerve center test under Hertz.' . . .The court has focused not on the day-to-day operations, but rather on who is directing, controlling, and coordinating those operations. In this instance, the daily operations happen to occur at the same locale where those operations are directed, controlled, and coordinated.") (citing Hoschar v. Appalachian Power Co., 739 F.3d 163, 171–72 (4th Cir. 2014) (reiterating its explanation that day-to-day operations are not relevant under Hertz and its conclusion that "if a corporation's day-to-day operations are managed in one state, while its officers make significant corporate decisions and set corporate policy in another, the principal place of business is the latter.").

The Authority has failed to rebut the testimony of the Area Vice President Myhan and the Financial Director Griffing that all major decisions in 2018 were directed, controlled, and coordinated at or from the office in Madison, Mississippi.  The Authority's argument that Myhan

18

and Griffing provided only oversight is not well-taken.  Moreover, the undersigned observed the testimony of Griffing at trial and found him to be a credible witness.  And Myhan's testimony is consistent with evidence offered by Griffing.

Additionally, there is no evidence that the employees involved in the day-to-day operations were or are making significant corporate decisions or policies.  For example, the Authority refers to Dean Brown, Director of Landfill Operation, to assert that Chastang Landfill operations were reported direct to Brown, and not Myhan, and thus Brown was directing, controlling, and coordinating the corporate activities (doc. 299, p. 13; doc. 323, p. 9, n.18).  The Authority also asserts that Polk and Green report to Brown (doc. 299, p. 15).  The Authority may be correct, that day-to-day operations were reported to Brown, but, and importantly, Myhan testified that Brown reported to Myhan (doc. 322-7, p. 2-3).

II. Conclusion

The complicated corporate structure of WM Mobile as a subsidiary of Waste Management is dispersed and many of the operations of WM Mobile are centralized in Waste Management's corporate office in Houston, Texas.  However, the Court finds that WM Mobile has met its burden to establish by competent evidence that its principal place of business or nerve center was located in Madison, Mississippi in October 2018 when this action was filed.

**DONE** and **ORDERED** this the 8th day of June 2022.

                                                /s / Kristi K. DuBose
                                                **KRISTI K. DuBOSE**
                                                **UNITED STATES DISTRICT JUDGE**